Lon S. ROGERS, Appellant,

v.

Barbara S. ROGERS, Respondent,

and

Raymond and June Rogers, Co–Respondents.

No. 57396.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 18, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied March 5, 1991.

Chester A. Love, David P. Card, II, St. Louis, for appellant.

Richard H. Edwards, Richard C. Bresnhan, Clayton, for respondent.

CRIST, Judge.

This is a dissolution case. The judgment is affirmed in part, reversed in part, and remanded in part. Husband, wife, and husband's parents appeal. Husband complains about the division of property, child support payments, maintenance payments, and payments of wife's attorney fees and court costs. Wife complains about lack of protection under the maintenance award, division of property, and certain property set off to parents as their property. Parents complain about wife's award of attorney fees and costs against them and the trial court's decision finding parents had made gifts to husband and wife instead of loans.

The order of the trial court will be sustained unless the record reveals no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 [1–3] (Mo. banc 1989).

Husband and wife were married in 1974. Their marriage was dissolved in July, 1989. Husband is approximately forty years old and wife is approximately thirty-eight years old. Husband is a veterinarian. Wife has a masters degree in food and business but has limited work experience.

Three children were born of the marriage, aged fourteen, eleven and nine.

The trial court set off marital property to husband valued at about $360,136. He was ordered to pay debts of about $49,230 leaving a net value of $310,906. Husband was awarded the veterinary practice and personal property relating thereto valued at $236,000. The trial court set off to wife the marital home valued at $215,000 and its furnishings and additions valued at $16,-500. It also set off to wife a cash judgment against husband in the sum of $110,-000.

In addition:

(1) Husband was ordered to pay wife her litigation expenses including attorney fees.

(2) Wife was granted primary custody of the three children.

(3) Husband is to pay $1,200 in child support per month for all of the three children.

(4) Husband is to pay for children's medical, dental and major medical insurance and all other medical expenses not covered by the insurance. He was further ordered to purchase and maintain a life insurance policy on his life in the face amount of $200,000, naming wife as irrevocable beneficiary.

(5) Husband is to pay towards the children's college education expenses, the equivalent of the costs for tuition, room, board and text books for each child to attend and pursue a four-year degree.

(6) Husband is to pay wife the sum of $1,250 per month for a period of sixty months as and for maintenance. The maintenance is non-modifiable.

(7) Husband is to pay the monthly mortgage payments on the marital home in the amount of $460.

### HUSBAND'S APPEAL

In husband's first point, he alleges the trial court abused its discretion by imposing too much financial responsibility on husband. Husband states he has never made more than $59,500 per year and cannot make maintenance payments for wife

and support payments for his three children totaling $2,450 per month. In addition, husband complains he is required to pay wife's attorney fees and court costs, mortgage on the marital residence, medical and health insurance for children, the premiums on a life insurance policy in favor of wife and pay wife a cash judgment of $110,000.

Husband was awarded substantial marital property from which to pay these obligations. He was awarded the veterinary practice business valued at $236,000. His net income from the veterinary practice in 1988 was $63,000. Additionally, husband was awarded the veterinary practice checking account in the amount of $27,000. Evidence indicates husband pays all his personal expenses out of his business account; in fact, husband does not have a personal checking account. Husband was awarded the following property: the Stonebridge Partnership valued at $39,000; the Oxford Partnership valued at $5,000; the Home Federal Savings and Loan account valued at $9,200; the proceeds from the sale of a marital pickup truck valued at $1,500; the Country Club bond valued at $1,500; three separate IRA accounts valued at $24,500; a marital car valued at $5,500; the Tri Fund Apartment Income valued at $2,000; the Equitec Fund valued at $2,000; a gift from his parents in the amount of $36,000; the Van Guard account valued at $1,357.56; the American Growth Account valued at $278.56 and a limited partnership valued at $65,000. Finally, husband lives in a home he rents from his parents and lives with a woman who shares living expenses.

Wife was only awarded liquid assets in the form of an IRA account valued at $4,300 and the children's trust account valued at $4,000. She was awarded her nonmarital inheritance valued at $19,000.

Husband's monthly expenses are $2,490. His average monthly income is approximately $4,200. This does not include income he receives from the income-producing property he was awarded or income from the woman he lives with who shares living expenses. Wife on the other hand has charge of the three children and the marital home. She has monthly expenses exceeding $4,000. She works cleaning other people's homes making about $520 per month. The interest on her inheritance investment is approximately $123 per month. Even with her income, maintenance, and child support she does not have enough with which to pay her expenses.

The trial court has broad discretion in dividing marital property. *Calia v. Calia*, 624 S.W.2d 870, 872[1–4] (Mo.App.1981). The division must be just but it need not be equal. *Id.* An accounting of the items awarded reveals an equitable distribution of the property. Husband has the means with which to pay the financial obligation imposed. This point is denied.

■ In husband's second point he complains the trial court erred in ordering husband to pay $1,250 per month for five years. The question of maintenance is within the sound discretion of the trial court and review on appeal is to determine only whether that discretion is abused. *Kessler v. Kessler*, 719 S.W.2d 138, 140[2] (Mo.App.1986). On appeal it is the burden of the party challenging the maintenance award, here husband, to show the award was so excessive that it constituted an abuse of discretion. *Id.* Husband has not met that burden.

Wife received her masters degree in consumer education in 1974. Despite her education, wife's work experience in her field extends only to the eleven months in 1975 she worked for Stokely Van Camp as a frozen food economist making only $8,000. She quit her job to move with husband to St. Louis so he could start his veterinary practice. Since that time, wife has never been employed on a full-time basis. Currently she works as a domestic cleaning other peoples' homes making approximately $130 per week. She has made numerous unsuccessful attempts to find employment in her field. She has been a substitute teacher in the past but would need at least two more years of schooling to become an accredited full-time teacher.

Wife testified her monthly expenses exceed $4,000. Wife has charge of the family home and the parties' three children. Wife

said at trial she would need $700 per month in maintenance and $600 per month per child in support for a total of $2,500 in order to get by. The trial court awarded wife $1,250 in maintenance to terminate in five years and $400 per month per child in support for a total of $2,450 per month. As addressed in point one, husband can pay maintenance and support of $2,450 and still have sufficient funds remaining to meet his reasonable needs. *Petty v. Petty,* 739 S.W.2d 738, 741–42[5] (Mo.App.1987). *Kessler v. Kessler,* 719 S.W.2d 138, 139[1] (Mo. App.1986). We find no abuse of discretion.

■ Husband next asserts the trial court erred in determining the $65,000 limited partnership interest was existent marital property. The evidence was conflicting.

Wife stated she had no knowledge of this asset but believed there was more money somewhere. And, she listed the property as marital property. Wife's witness said he had obtained the information for the existence of the asset from husband. He had placed the information on a form which was signed by husband. The form was in evidence. Husband testified there was no such property. We defer to the finding of the trial court.

■ In this same point, husband also contends there was insufficient evidence to find the existence of the following: the $9,200 Home Federal Savings and Loan account; the $27,000 veterinary practice business checking account; and the $1,357.56 Van Guard account. There was substantial evidence to support the existence of these accounts. The trial court's finding that these accounts were existent marital assets was not clearly erroneous. *See Barber v. Barber,* 748 S.W.2d 679, 680–681[2] (Mo.App.1988). Furthermore, the trial court was at liberty to believe or disbelieve the husband's explanation that these funds were non-existent because he used them to pay marital expenses. *Bland v. Bland,* 652 S.W.2d 690, 692[1–3] (Mo. App.1983). We cannot say the rejection by the trial court of this contention was unjustified. Husband also contends the $25,-000 he paid parents was non-existent prop-

erty. We will discuss this contention at a later point.

■ Husband next asserts the trial court erred in awarding a compensating cash judgment to wife in the amount of $110,-000, and if the award was justified, the trial court erred in not allowing husband to pay it in installments.

A court may order cash payments to effect a just division of marital property. *Calia,* 624 S.W.2d at 872[7, 8]. This devise is employed when it is impossible or imprudent to divide a piece of property in kind. *Id.* It is also permissible to order a cash transfer without linking it to any particular asset. *Id.*

In ordering a cash transfer to wife, the trial court could have considered the fact that husband received the veterinary practice and the veterinary practice business account. Additionally, husband was awarded savings accounts, IRA accounts and partnership interest accounts totaling over $246,000. The division of property must be just but need not be equal. *Id.* at 872[1–4].

■ As to whether or not the trial court should have provided for husband to pay the cash judgment in installments, the evidence is clear husband has sufficient means with which to pay the cash judgment, in full, without depleting all of his income-producing property. It is within the trial court's discretion to order installment payments. *Levesque v. Levesque,* 773 S.W.2d 220, 223[9–13] (Mo.App.1989). This point is denied.

■ Husband next asserts the trial court erred in requiring husband to pay all of the children's medical and dental expenses and also pay for their college education.

The trial court ordered husband to "provide medical, dental and major health insurance coverage for the minor children. All medical and dental expenses, including orthodontia, not covered by said insurance are the sole responsibility of [husband]. . . . [Husband] shall pay towards the children's college education expenses the equivalent of the cost for tuition, room, board and textbooks for each child to attend and pur-

sue a four-year degree at a Missouri state college or university."

Husband contends these provisions are too vague and uncertain to be enforceable. *Echele v. Echele*, 782 S.W.2d 430 (Mo.App. 1989) and *Hahn v. Hahn*, 785 S.W.2d 756 (Mo.App.1990) notwithstanding, it is almost impossible to fashion a child support decree with such specificity as to be enforced by execution upon the happening of future events. The court in *Bryson v. Bryson*, 624 S.W.2d 92 (Mo.App.1981) understood this. It understood in *Glassberg v. Obando*, 791 S.W.2d 486 (Mo.App.1990), the education, support, welfare and needs of children are of such paramount importance as to permit the filing of a motion to implement the enforcement of such judgment upon the happening of such event. *Id.* at 488–490[4, 5]. Such was the vision of *Bryson*. *Bryson*, 624 S.W.2d at 96[4]. However, it is obvious the children's medical and dental expenses, health insurance and college education provisions can be made more specific. And, to be on the safe side, the cause is remanded for the sole purpose of the trial court's fashioning more specific provisions as to these matters. Surely, the parties can agree to the proper language for such amendments. Husband is certainly in a financial position to pay for such dental, medical, health insurance and college education.

■ Husband also complains the trial court erred in failing to require wife to execute consent forms so as to permit him to claim the children as dependents on his tax forms. It was not an abuse of discretion to award wife, the custodial parent, the right to claim the children for tax purposes. *Schneider v. Dougherty*, 747 S.W.2d 763, 765[1–3] (Mo.App.1988). *See also* 26 U.S.C. § 152(e). This point is denied.

■ Husband contends the trial court erred in requiring husband to purchase and maintain life insurance on his life in the amount of $200,000 and name wife as irrevocable beneficiary. In so far as this provision may have been designed to provide support for the children after the death of husband it is void. *Wynn v. Wynn*, 738 S.W.2d 915, 920[8] (Mo.App.1987). In so far as it may have been designed to provide maintenance to wife after the death or remarriage of husband an amount of $200,-000 is oppressive. *McAvinew v. McAvinew*, 733 S.W.2d 816 (Mo.App.1987) found a decree for monthly maintenance secured by insurance showed an intent the maintenance was to continue after the death of the paying spouse. *Id.* at 819[3]. The maximum liability of husband in our case is $75,000 (60 × $1,250). For the reason it is in the best interest of the parties for an immediate end to this litigation, we remand this point for the trial court to fashion an amendment to its decree providing for husband to purchase and maintain reducing term life insurance on his life to secure the payment of wife's five-year maintenance. It is deemed to be maintenance in gross. Rule 81.14.

■ Husband proffers he should not have had to pay wife's attorney fees, suit money and court costs in the aggregate of $42,525. For reasons heretofore stated, husband should pay wife's attorney fees, suit money and costs. *Levesque*, 773 S.W.2d at 223[14]. Husband also states the court had miscalculated because it used an attorney fee figure of $11,025 in sec. III.9 of the decree when referring to its attorney fee order of $15,025 in sec. III.8.f of such decree. The order of $15,025 takes precedence over the reference to $11,025.

In any event, the ultimate question is whether the court erred in awarding $42,-525. The trial court has wide discretion in awarding attorney fees. *Id.* Wife's evidence showed her attorney fees accrued was $36,520.75. Her lawyer testified there was to be added thereto time spent in trial on 2–17–89 and time to be spent in preparation of wife's proposed decree of dissolution. The amount over and above the stated attorney fees and costs is $3,504.25. We award $1,504.25 attorney fees for the one day trial and preparation of the decree. We amend sec. III.9 of the decree so the reference to sec. III.8.f shall be $15,025 and the attorney fees awarded therein shall be reduced from $25,000 to $23,000. Rule 81.14.

■ Finally husband alleges the trial court erred in finding the funds advanced to husband and wife by his parents were gifts not loans. This point is identical to parents' point II of their appeal and we will address it here.

Whether or not there was a gift is a question of fact. *Cochenour v. Cochenour,* 642 S.W.2d 402, 405[3] (Mo.App.1982). A person claiming an inter vivos gift, here the wife, must prove it by clear and convincing evidence. *In re estate of Piper,* 676 S.W.2d 897, 899[2, 3] (Mo.App.1984). The essentials of such a gift are (1) a present intention to make a gift on the part of the donor, (2) a delivery of the property by donor to donee, and (3) an acceptance by donee whose ownership takes effect immediately and absolutely. *Id.*

In 1976, parents advanced to husband and wife approximately $30,000 to enable husband to purchase his veterinary practice. A letter dated 3/3/76 from father to husband was offered into evidence. It stated in part, "This letter will confirm our understanding with you and [wife] regarding our advancing you $30,000 to pay for the expenses and investment costs ... of the veterinarian [sic] practice.... As discussed this amount is to be paid back as soon as you have the practice on a positive cash flow basis...." Father testified that in 1977, husband and wife made a $5,000 payment to parents plus a $1,200 interest payment. Then in 1981, parents advanced to husband and wife approximately $63,000 to enable husband and wife to complete construction on a new home. In December, 1986, two weeks before filing a petition for dissolution, husband paid parents $25,000. Husband testified at trial the $30,000 loan was paid off in its entirety in December, 1986, by payment of the $25,000. Wife testified she was unaware husband paid parents the $25,000. The evidence showed the $25,000 used to pay parents came from funds parents had previously given husband and wife and payment was made from an account in husband's name alone of which wife had no knowledge. Parents allege $50,700 is still owed on the loans.

It is clear from the facts that parents delivered the money to husband and wife and their acceptance took effect immediately and absolutely. Parents gave the money to husband and wife and they used the money to purchase husband's veterinary practice and build a marital home. The seminal issue is whether parents intended to make a gift of the money advanced. Conduct is an enlightening ingredient in discerning intent. *In re estate of Hoffman,* 490 S.W.2d 98, 103[2, 3] (Mo.1973).

The following facts were sufficient for the trial court to believe the money advanced to husband and wife were gifts:

(1) Two weeks before husband filed his petition for dissolution he paid parents $25,000 on the alleged loan.

(2) The alleged $30,000 debt had been incurred ten years earlier with the only other payment being $5,000 in 1977.

(3) Only six months' interest was paid and then only in 1977.

(4) Husband, in his reply to parents' cross-claim, stated as affirmative defenses to parents' claim the monies advanced were loans, and the claim was barred by the Statute of Frauds and Statute of Limitations.

(5) No promissory notes or other written agreements were executed.

(6) Wife only became aware of the $25,000 payment during preparation for trial.

(7) Payment of the $25,000 was made from an account in husband's name alone of which wife had no knowledge.

(8) The $25,000 was paid from money parents advanced to husband and wife earlier.

(9) No payment schedule or demand for payment appears on the record.

(10) Wife testified she and husband attended a champagne celebration with parents where she thought they were celebrating the money advanced did not have to be repaid.

Point denied.

## WIFE'S APPEAL

In wife's first point she alleges the trial court erred in failing to make her mainte-

nance award payable notwithstanding her remarriage or death. This point is moot by reason of the modification requiring husband to maintain a reducing term life insurance policy securing the payment of wife's maintenance. This point is denied.

In wife's second point, she alleges the trial court erred in not allocating to husband sole responsibility for lease payments on the veterinary practice property because the veterinary practice and its assets were awarded to husband.

Again wife did not request this at trial nor was this included in her proposed findings of fact and conclusions of law. Furthermore, the court is not required to divide and allocate marital debt. *Harry v. Harry*, 745 S.W.2d 824, 826[5, 6] (Mo.App. 1988); *Russo v. Russo*, 760 S.W.2d 621, 624[5] (Mo.App.1988). There was no abuse of discretion. This point is denied.

██ Next wife asserts the trial court abused its discretion by not designating the cash award, attorney fees and court costs awarded and other items set off to wife as maintenance in gross. Under the Dissolution of Marriage Act, §§ 452.300–.415, RSMo 1986, awards of maintenance and awards of attorney fees are treated separately. *Dyche v. Dyche*, 570 S.W.2d 293, 296[3, 4] (Mo. banc 1978). The trial court did not abuse its discretion by not setting the cash judgment, attorney fees and other items as maintenance. This point is denied.

██ Finally, wife contends the trial court erred in finding that wife and husband had no ownership interest in the business property located at 12550 Olive Boulevard. Both husband and parents testified parents purchased the property at 12550 Olive Boulevard and maintained sole interest in the property. Parents testified they purchased the property with the understanding that husband and wife would have no financial interest in the property. Parents produced numerous exhibits at trial which clearly indicated they were sole owners of the property. Among the exhibits was a quit-claim deed from seller which transfers the real estate to parents. Other exhibits included tax returns and cancelled checks showing parents were sole owners

and that wife and husband had no interest. There was substantial evidence to support the trial court's finding. This point is denied.

### PARENTS' APPEAL

Parents contend the trial court abused its discretion in awarding wife a judgment against them in the amount of $25,000 for attorney fees and in the sum of $2,500 for court costs.

██ Parents contend § 452.355, RSMo 1986, does not permit the allocation and taxing of attorney fees against any person other than the petitioner and/or the respondent in a dissolution proceeding. Section 452.355 provides in part:

> The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees....

We have been unable to discover a case in which a third party was charged with attorney fees and/or costs under § 452.355, nor or we aware of any other statute which would provide for such an award.

Statutes allowing taxation of costs are strictly construed. *Parrett v. Integon Life Ins. Co.*, 590 S.W.2d 411, 413[3–5] (Mo.App. 1979) (en banc). No item is taxable as costs unless specifically so provided by statute. *Id.*

Strictly construing § 452.355, it is our opinion the legislature intended this statute to permit the allocation and taxing of court costs and/or attorney fees against a petitioner or respondent only in a dissolution action. The trial court was therefore without jurisdiction to order parents to pay wife's attorney fees and court costs. This point is reversed.

Parents' second point on the gift issue is found against parents as hereinabove provided.

Parents allege error in the trial court's failing to grant their motion in limine to

prohibit wife from refuting parents' affirmative defenses to wife's first amended petition because wife failed to specifically deny the affirmative defenses as required by Rule 55.09. By not specifically denying the affirmative defenses, they should have been deemed admitted under Rule 55.09.

■ However, the trial court granted wife leave to file an amended answer in order to deny the affirmative defenses. Parents did not object to wife's request to file an amended answer nor to the trial court's granting the request. Rule 44.01(b) gives the trial court broad discretion in ordering a period enlarged. In *Kaiser v. Pearl*, 670 S.W.2d 915, 920[13, 14] (Mo.App. 1984), the plaintiff requested that their pleadings be deemed admitted because defendant failed to file a responsive pleading as required by Rule 55.09. It was held not erroneous for the trial court to allow the late filing of the answer. *Id.* Similarly, it was not an abuse of discretion for the trial court to allow wife to file an amended answer. This point is denied.

Next parents assert the trial court erred in failing to grant parents' motion for summary judgment on wife's crossclaim against them because wife failed to timely file an opposing affidavit as required by Rule 74.04(c).

The trial court, in its broad discretion, permitted wife leave to file an affidavit on October 26, 1988. This was not an abuse of discretion. Rule 44.01(b). This point is denied.

That part of the decree requiring husband to pay the children's major medical health insurance, medical, dental and orthodontic expenses not covered by medical insurance is affirmed but remanded for the sole purpose of fashioning more specific provisions relating thereto; that part of the decree requiring husband to pay the children's college education the equivalent of cost for tuition, room, board and textbooks for each child to attend and pursue a four-year degree at a Missouri state college or university is likewise affirmed but remanded for the sole purpose of fashioning more specific provisions relating thereto; and that part of the decree providing husband

is to purchase and maintain a life insurance policy on his life in the face amount of $200,000 naming wife as irrevocable beneficiary is reversed, but in lieu thereof the trial court shall order husband to purchase and maintain reducing term life insurance on his life to secure the $75,000 payment of wife's five-year maintenance; that part of the decree providing husband's parents shall pay attorneys fees and costs is reversed; that part of the decree providing husband shall pay $25,000 in attorney fees shall be amended by the trial court so that husband shall pay $23,000; and the decree is in all other respects affirmed.

GARY M. GAERTNER, P.J., and BRADY, Senior Judge, concur.